KITCHENS, Justice,
Dissenting.
¶ 44. Today’s decision marks the end of a poor performance by our state’s criminal justice system in the case of this defendant. Roach may very well be guilty of the crimes of which he is accused, but our fidelity to the law must transcend our attention to specific results. “It is not enough to justify a conviction that the defendant be guilty. He has a right to be tried in accordance with the rules of law.” Rutherford v. United States, 258 F. 855, 863 (2nd Cir.1919). Today’s ruling falls short of that charge, and therefore, I respectfully dissent.
I.
¶ 45. Consistent with the Fourth Amendment to the U.S. Constitution and its counterpart in the Mississippi Constitution of 1890 (Article 3, Section 26), a police officer seeking judicial authority to conduct a search must submit his assertions concerning probable cause to “a neutral and detached magistrate,” who is in a more objective position to judge the evidence dispassionately than “the officer engaged in the often competitive enterprise of ferreting out crime.” Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948). When the magistrate’s judgment has been satisfied that probable cause exists, a search warrant should issue. Under limited circumstances, a search will be judged valid, even when the search warrant itself is not. See United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (announcing the so-called good-faith exception to the warrant requirement).
¶ 46. When the police officer’s search warrant contains false information of a material nature, any warrant predicated *929 upon it is rendered invalid. Leon notwithstanding, Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), still stands for the proposition that when a defendant “makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit,” that defendant is entitled to a hearing to determine whether the affidavit did, in fact, include false information. Id. at 155-56, 98 S.Ct. 2674. At that hearing, if the defendant shows by a preponderance of the evidence that information within the warrant application is false, then that portion of the affidavit is stricken, and the remainder of the affidavit is examined to ascertain whether probable cause survives. Id. at 156, 98 S.Ct. 2674.
¶ 47. At this juncture, we need not determine whether the search warrant in this case should be held invalid. What we should do, though, is state the obvious: that Roach has made a substantial showing that the police applied for this search warrant on the basis of information that they knew, or should have known, was wrong, namely, that the confidential informant had a proven history of providing reliable information to the applying officer, who had met him only the day before. Whether this patently inaccurate and clearly material representation rises to the level of perjury, and whether exclusion of that information invalidates the magistrate’s finding of probable cause, are questions not now before this Court. But applicable constitutional guarantees and basic considerations of fatness demand that we now remand this case for such determinations to be made in drcuit court.
II.
¶ 48. But this case’s most flagrantly egregious moment was saved for the trial itself, when the trial judge allowed the defendant’s most important witness to be arrested in front of the jury.
¶ 49. If the prosecution had sought to introduce character evidence of a prior arrest against this witness, the trial judge would have been obligated to reject it. Miss. R. Evid. 609(a)(1) (limiting attacks against a nonparty witness’s credibility to crimes of which he has been convicted). And if the prosecution had attempted to compel the witness to submit to an in-court re-enactment of such an arrest, the trial judge likewise would have been duty bound to refuse the request. See Goggins v. State, 529 So.2d 649, 653-54 (Miss.1988) (in-court re-enactment of an identification was inappropriate because the performance carried no probative value and could prejudice the jury). Nevertheless, the trial judge exceeded both of those limitations and assented to the dramatic, in-court arrest of a defense witness in the presence of the jury. How the trial judge could have believed that Roach’s right to a fair trial, by a jury that was influenced only by applicable law and credible, relevant evidence, was not negatively impacted by this spectacle is beyond the comprehension of any rational mind.
¶ 50. The infirmity of in-court arrests is not a phenomenon of first impression in Mississippi. More than a century ago, in Chase v. State, 75 Miss. 502, 22 So. 828 (1897), this Court considered the misdemeanor conviction of a defendant who, like Roach, watched as the trial judge allowed a defense witness to be arrested in court and in full view of the jury. Our judicial forebears affirmed the conviction, but only because the trial judge himself acknowledged that his conduct had amounted to reversible error and afforded the defendant the opportunity to impanel a new jury, which defense counsel waived. Id. at 504-05, 22 So. 828. “The conduct of the *930 judge of the lower court,” the Chase justices noted, “was open, manly and most honorable.” Id. at 505, 22 So. 828.
¶ 51. In 1927, this Court again considered the kind of unusual circumstances that present themselves in the instant case. In reviewing a trial overseen with less magnanimity than that on display in the case of Chase, this Court reversed the conviction of a defendant during whose trial the sheriff arrested a defense witness at the behest of the trial judge. Johnson v. State, 141 Miss. 49, 105 So. 851 (1925). Speaking for a unanimous Court, Justice Anderson wrote that the trial judge’s actions violated the ancient and well-established prohibition against judges commenting on the credibility of witnesses.
We can hardly conceive of how a witness could be more thoroughly discredited than by the action of the trial judge in ordering his arrest as he is leaving the witness stand, whether his arrest be upon the ground that he had committed perjury on the witness stand or has been guilty of some crime elsewhere.
Id. at 54,105 So. 851.
¶ 52. The statute upon which the Johnson Court based its decision lives on today at Section 99-17-35 of the Mississippi Code, which commands that a trial judge “shall not sum up or comment on the testimony, or charge the jury as to the weight of the evidence.... ” Miss.Code Ann. § 99-17-35 (Rev.2007). On these grounds, we have reversed convictions ruled over by judges who were far kinder to witnesses. See Stallworth, v. State, 310 So.2d 900 (Miss.1975) (holding that a judge’s warning to a witness who rendered testimony inconsistent with his statement to police constituted impermissible comment on the evidence). But where the episode ends in the arrest of a defense witness in the jury’s presence, the question is far less difficult. Short of ordering the immediate assembly of a firing squad, one has a hard time imagining a more powerful comment on a witness’s credibility than the judge’s having him shackled and led away from the immediate environs of the very people who were there to assess that credibility: the jurors.
¶ 53. Our state is among a multitude of jurisdictions in which this precise problem has arisen in courtrooms. And across the centuries, with near-universal voice, our sister jurisdictions have rejected the notion that such a sideshow does not require reversal. One state’s high court addressed this problem long ago in this way:
It is clear to us that the remarks of the prosecuting attorney and the action of the court in ordering the witness into the custody of the sheriff was most prejudicial to the defendant. The action of the court informed the jury that it was satisfied that the witness had committed either perjury or [another crime], which very much discredited him in the minds of the jury as well as prejudiced the defendant’s case. It is a well-recognized fact that jurors as a rule are quick to discern the opinion of the trial court as to the guilt or innocence of a defendant, or his opinion as to the truthfulness of a witness, and if a juror concludes from the act or suggestions of the court that it disbelieves a witness, it is sure to have a prejudicial effect against the litigant calling the witness.... ”
State v. Clark, 27 Idaho 48, 56-57, 146 P. 1107 (1915). See also Burke v. State, 66 Ga. 157 (1880); People v. Wolcott, 51 Mich. 612, 17 N.W. 78 (1883); Huff v. Territory, 15 Okla. 376, 85 P. 241 (1905); State v. Sunnk, 151 N.C. 726, 66 S.E. 448 (1909); McDonough v. Blossom, 109 Me. 141, 83 A. 323 (1912); Blackwell v. State, 76 Fla. 124, 79 So. 731 (1918); People v. Filipak, 322 Ill. 546, 153 N.E. 673 (1926); Knox v. State, 111 Tex.Crim. 601, 13 S.W.2d 378 *931 (1929); Lile v. State, 186 Ark. 483, 54 S.W.2d 293 (1932); People v. Harris, 8 N.Y.S.2d 521, 255 A.D. 1011 (N.Y.App.Div. 1938); State v. Kish, 4 Ohio App.3d 252, 448 N.E.2d 455 (1981); Williams v. State, 629 P.2d 54 (Alaska 1981); State v. Ferrell, 186 W.Va. 307, 412 S.E.2d 501 (1991); Johnson v. State, 352 Md. 374, 388, 722 A.2d 873 (1999) (citing favorably Long v. State, 31 Md.App. 424, 432, 356 A.2d 588 (1976)); Rutherford v. United States, 258 F. 855 (2nd Cir.1919); McNutt v. United States, 267 F. 670 (8th Cir.1920); United States v. Bates, 468 F.2d 1252 (5th Cir. 1972).
¶ 54. And though, ultimately, any designation of error rests with the trial judge, we should not let this case pass from our chambers without also noting, with disapproval, the behavior of the prosecutor. A prosecutor “may prosecute with earnestness and vigor — indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones.” Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). The Rules of Professional Conduct further establish that “[a] prosecutor has the responsibility of a minister of justice and not simply that of an advocate. This responsibility carries with it specific obligations to see that the defendant is accorded procedural justice and that guilt is decided upon the basis of sufficient evidence.” Miss. R. Profl Conduct 3.8 cmt.
¶ 55. That responsibility was compromised in this case. And for what? The State adduced evidence that was more than ample to convict Roach in a fair trial. Not satisfied with presenting a strong case in a straightforward and professional manner, this prosecutor permitted his zeal for a conviction to overcome his ethical obligations, and in doing so, violated our state and national constitutions and unfairly tainted these proceedings. Zealousness is a worthy quality in a prosecutor; but when prosecutorial zeal is allowed to undermine a defendant’s constitutional rights, not only is justice endangered, but also the people by thrusting upon appellate courts the duty to reverse convictions of some persons from whom the public should be protected. Such shortsightedness is unbecoming a public servant, particularly one entrusted with the vital role of a prosecutor.
¶ 56. The same fault lies with the trial judge in this case. Generally speaking, this Court has made very clear that a trial judge commits reversible error when he or she takes any action that will “cause the jurors to question [the court’s] impartiality toward the parties.” Jasper v. State, 759 So.2d 1136, 1140 (Miss.1999). More specifically, we have held that, even in civil matters, a trial judge clearly invades the province of the jury by commenting on a witness’s credibility and that such comments are “tantamount to informing the jury that the witness is being deceitful and evasive.” MIC Life Ins. Co. v. Hicks, 825 So.2d 616, 625 (Miss.2002). The judge’s obligation to remain neutral in word and deed is even stricter in criminal cases. “It is the supreme duty of a trial judge, in so far as it is humanly possible, to hold the scales of justice evenly balanced between the litigants.” West v. State, 519 So.2d 418, 422 (Miss.1988). “[Potential prejudice lurks behind every intrusion into a trial made by a presiding judge. The reason for this is that a trial judge’s position before a jury is overpowering. His position makes his slightest action of great weight with the jury.” Id. at 423 (quoting United States v. Hickman, 592 F.2d 931, 933 (6th Cir.1979)). By conceding to the arrest of a witness in front of the jury, the trial judge recklessly compromised his duty of neutrality in a fundamental way.
*932 ¶ 57. Roach may indeed be guilty of the crime of which he was accused. And if this is so, he should be held accountable. But if he is to suffer the judgment and consequences of guilt, then American justice demands that this must occur in the context of a fair trial, propelled by evidence from a constitutionally valid investigation, conducted by an ethically sensitive prosecutor, and overseen by a neutral trial judge. Anything less not only prejudices defendants, but indeed, prejudices the credibility and trustworthiness of the criminal justice system itself. Under such circumstances, this Court should reverse and remand for a judgment fairly rendered.
GRAVES, P.J., JOINS THIS OPINION IN PART.